# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP DANIEL O'DONNELL, ) <br> **Plaintiff,** ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting ) <br> Commissioner of Social Security, ) <br> **Defendant.** ) <br> _____ ) | NO. CV 17-1869-KS <br><br> **MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

PHILLIP DANIEL O'DONNELL ("Plaintiff") filed a Complaint on March 8, 2017, seeking review of the denial of his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. (Dkt. No. 1.) The parties have consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 8, 13-14.) On November 11, 2017, the parties filed a Joint Stipulation. (Dkt. No. 22 ("Joint Stip.").) Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. at 26-28.) The Commissioner requests that

the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*Id.* at 28-29.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On April 23, 2013, Plaintiff, who was born on July 13, 1960, filed an application for a period of disability and DIB.[1] (Administrative Record ("AR") 17, 146-47.) Plaintiff alleged disability commencing on March 1, 2013 due to depression, anxiety, and emotional problems. (AR 84.) Plaintiff previously worked as a customer service representative, order clerk, and loader/unloader. (AR 23.) After the Commission denied Plaintiff's application initially (AR 102-04), Plaintiff requested a hearing (AR 105-06).

At a hearing held on October 9, 2015, at which Plaintiff appeared with counsel, an Administrative Law Judge ("ALJ") heard testimony from Plaintiff and a vocational expert. (AR 28-82.) On December 3, 2015, the ALJ issued an unfavorable decision denying Plaintiff's application for a period of disability and DIB. (AR 17-24.) On March 6, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-3.)

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five step evaluative process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his March 1, 2013 alleged onset date; and, at step two that Plaintiff had a medically determinative mental impairment, affective disorder, which was severe. (AR 19.)[2] At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any

---

[1] Plaintiff was 52 years of age at the alleged onset date. (*See* AR 23.) Under agency regulations, Plaintiff was considered a person closely approaching advanced age. *Id.* § 404.1563(d).

[2] Plaintiff did not allege any physical problems. (AR 19.)

2

impairments listed in the Commissioner's Listing of Impairments. (AR 20.) The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels, but with the following non-exertional limitations. [Plaintiff] is limited to simple, routine, and repetitive tasks; occasional interaction with co-workers and the general public; and frequent interaction with supervisors. He is able to deal with changes in the work setting. [Plaintiff] is also limited to simple work-related decisions.

(AR 21.) At step four, the ALJ concluded that Plaintiff could not perform his past relevant work, but found at step five, that Plaintiff could perform other work existing in significant numbers in the national economy, specifically, the occupations of industrial cleaner (DOT 381.687-018, SVP of 2, medium exertion level)[3]; kitchen helper, (DOT 318.687-010, SVP 2, medium exertion level); and bill poster (DOT 299.667-010, SVP of 2, medium exertion level). (AR 23, 24.)

Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 24.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

---

[3] "DOT" refers to the Dictionary of Occupational Titles while "SVP" refers to "specific vocational preparation", which is the amount of time required to prepare for a particular type of job. *See* https://www.ssa.gov/appeals/public_experts/Vocational_Experts_(VE)_Handbook-508.pdf., at p.33.

reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citations omitted); *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

**DISCUSSION**

Plaintiff alleges the following four errors: (1) the ALJ failed to account for all of Plaintiff's mental impairments at step two; (2) the ALJ failed to properly consider the

4

opinion of Plaintiff's treating psychiatrist; (3) the ALJ failed to properly evaluate the credibility of Plaintiff's testimony and the statement of a lay witness; and (4) the ALJ's RFC determination failed to account for all of Plaintiff's limitations. (Joint Stip. at 2-3.)

For the reasons discussed below, the Court concludes that the second issue and a part of the third issue warrant reversal and remand for further administrative proceedings.

## I. Step Two Finding (Issue One)

Plaintiff contends that the ALJ's step two determination, which listed only an affective disorder as a severe impairment, was erroneous because the ALJ failed to also list Plaintiff's anxiety disorder and depressive disorder as severe impairments. (Joint Stip. at 4-5.)

### A. Applicable Law

Step two of the Commissioner's sequential evaluation process requires the ALJ to determine whether an impairment is severe or not severe. *See* 20 C.F.R. § 404.1520(a). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the Commissioner's regulations, an impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520(c), 404.1521(a). For mental impairments, examples of basic work activities are the ability to understand, carry out, and remember simple instructions; the use of judgment; the ability to respond appropriately to supervision, coworkers, and usual work situations; and the ability to deal with changes in a routine work setting. Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3. The Ninth Circuit has described step two as "a de minimis screening device to dispose of groundless claims." *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

**B. Analysis**

In March 2013, Plaintiff went to the emergency room at Olive View/UCLA Medical Center with complaints of anxiety and depression, as well as a vision problem. (AR 255, 262.) Plaintiff reported to the ER staff that he had "been anxious and depressed since [his] unemployment ran out." (AR 255.) He did not report any visual or auditory hallucinations or suicidal ideation. (*Id*.) The psychiatric assessment noted that Plaintiff was oriented, his speech clear, his mood anxious, but his affect was normal and his thought process was linear, his behavior cooperative. (AR 256.) He appeared well nourished and his grooming and clothing were clean. (*Id*.) Plaintiff was diagnosed with major depressive disorder and anxiety - not otherwise specified ("NOS"). (AR 258, 264, 278.) Plaintiff was also given a referral to an eye doctor. (AR 264.) Because Plaintiff did not meet the criteria for involuntary hospitalization, he was discharged. (AR 278.)

One month later, in April 2013, Plaintiff presented at San Fernando Mental Health ("SFMH") again complaining of feelings of hopelessness and inability to function socially. (AR 284.) The record indicates that in March 2013, he was prescribed the anti-depresssant Celexa, which was "somewhat" effective. (AR 285.) The SFMH records reflect a diagnosis of generalized anxiety disorder, depression NOS, and Plaintiff was approved for outpatient mental health services. (AR 288.) He also eventually had cataract surgery. (AR 304.)

Plaintiff's contention that the ALJ did not expressly list his depressive disorder and anxiety disorder at step two is not, by itself, a basis for reversal. *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC."). Rather, Plaintiff must identify the limitations from those disorders that the ALJ failed to consider. Otherwise, the ALJ's failure to list a particular impairment at step two is harmless error if the ALJ otherwise adopted the

limitations from that impairment in the remainder of the five-step evaluation. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (concluding that any failure to list bursitis as severe at step two was harmless error where ALJ considered any functional limitations imposed by the bursitis at step four); *Burch*, 400 F.3d at 682-84 (concluding that any failure to list obesity as severe at step two was harmless error where ALJ considered any functional limitations imposed by the obesity at steps three and five and in the RFC determination).

Here, the ALJ specifically noted that "[t]he evidence establishes that [Plaintiff] has an affective disorder, which is manifested by depressed mood with irritability and memory impairment." (AR 22.) The ALJ also noted that the updated SFMH records for the period January 29, 2014 through August 20, 2015 showed that Plaintiff "continued to have anxious mood and affect, irritability, feelings of sadness, and feelings of hopelessness." (*Id.*) Thus, the ALJ found that Plaintiff had cleared the step two hurdle and that his mental impairment imposed several functional limitations, including a limitation to simple, routine, and repetitive tasks. (*Id.*) Further, the ALJ determined that Plaintiff's interaction with others was also limited. (*Id.*) Consequently, the record reflects that the ALJ took into account the effects of both Plaintiff's symptoms of depression and anxiety in assessing Plaintiff's mental limitations. Plaintiff has not clearly identified what additional limitations from his depressive disorder and anxiety disorder should have been incorporated.[4] Because the agency's path in identifying the limitations associated with Plaintiff's mental impairments is reasonably discernible, the ALJ's failure to separately list the depression and anxiety impairments at step two was, at most, a harmless error that does not warrant reversal.

//
//
//

---

[4] The functional limitations established by the treating psychiatrist's opinion are addressed separately in Issue Two.

7

## II. Treating Physician's Opinion (Issue Two)

Plaintiff contends that the ALJ failed to properly evaluate the opinion of his treating psychiatrist, Dr. Paul Bong. (Joint Stip. at 8-12.)

### A. Applicable Law

The opinion of a treating source is generally entitled to greater weight than the opinion of doctors who do not treat the claimant because treating sources are "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also* 20 C.F.R. § 404.1527(c)(2). To reject an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). If, however, the treating physician's opinion is contradicted by another medical source, the ALJ must consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to accord it. "These factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician, the '[n]ature and extent of the treatment relationship' between the patient and the treating physician, the '[s]upportability' of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole." *Ghanim*, 763 F.3d at 1161 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). Ultimately, the ALJ must articulate "specific and legitimate reasons that are supported by substantial evidence" to reject the contradicted opinions of a treating physician. *Ghanim*, 763 F.3d at 1161.

//
//
//
//

8

**B. Analysis**

In March 2014, Dr. Bang, Plaintiff's treating psychiatrist, completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental), in which he opined regarding Plaintiff's mental ability to perform work. (AR 320-26.) Dr. Bang stated that Plaintiff had "marked" limitations in all applicable fields of mental functioning, specifically, the ability to interact appropriately with the public, supervisors, and co-workers; and the ability to respond appropriately to work pressures in a usual work setting and to changes in a routine work setting. (AR 321.) The opinion included a detailed explanation from Dr. Bang, who stated in relevant part:

> [Plaintiff] is unable to adapt to stresses common to the work environment, including decision-making, attendance, schedules, and interacting with supervisors or colleagues. He is too depressed and withdrawn to work in any setting. He relies on others to help care for him and his basic needs. Prior to his illness, he was able to work and adapt to stresses common to the work environment.

(AR 325.)

The ALJ summarized Dr. Bang's opinion but, without any analysis, failed to adopt any of the "marked" limitations described in the opinion. (AR 21.) Indeed, the ALJ gave no indication of what weight, if any, he assigned to Dr. Bang's opinion. It is well-settled that if an ALJ rejects a treating physician's opinion, the ALJ must articulate legally sufficient reasons for doing so, and may not silently reject that opinion simply by making contrary findings. *See Salvador v. Sullivan*, 917 F.2d 13, 14 (9th Cir. 1990) ("[T]he ALJ never evaluated [the treating physician's] findings or conclusions, but only summarized [the treating physician's] opinion generally without any specific reference as to why he

disregarded it. This is not a sufficient statement of reasons."); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n. 10 (9th Cir. 2007) (an ALJ cannot avoid the requirement to expressly evaluate a treating physician's opinion simply by mentioning the opinion or by making findings contrary to it); *Smolen*, 80 F.3d at 1286 (same). Thus, the ALJ's failure to expressly evaluate Dr. Bang's opinion was legal error.

The Commissioner contends that the ALJ did articulate three reasons to reject Dr. Bang's opinion: (1) Dr. Bang's opinion was inconsistent with Plaintiff's own statements; (2) Dr. Bang's opinion was inconsistent with that of an examining psychiatrist, Dr. Yee; and (3) Dr. Bang relied too heavily on Plaintiff's subjective complaints. (Joint Stip. at 14-15.) But nowhere in his adverse decision, did the ALJ specifically relate any of these reasons to Dr. Bang's opinion. Thus, the Court cannot attribute these reasons to the ALJ's rejection of the treating psychiatrist's opinion. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (rejecting an ALJ's evaluation of a treating physician's opinion where the ALJ merely stated that the objective factors pointed toward a conclusion adverse to that opinion, with "no effort to relate any of these objective factors to any of the specific medical opinions and findings he reject[ed]").

In some instances, a reviewing court may draw "specific and legitimate inferences" from which to conclude that an ALJ properly rejected a treating physician's opinion "if those inferences are there to be drawn." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). Such an inference cannot be drawn here. In *Magallanes*, it was not difficult to infer that the ALJ properly rejected a treating physician's opinion because the ALJ did in fact expressly evaluate that opinion as well as the other medical evidence, but merely neglected to "recite the magic words" that he was in fact rejecting the treating physician's opinion. *See* 881 F.2d at 755. Here, the ALJ's opinion contains no similar evaluation of the treating psychiatrist's opinion and the other medical evidence from which a specific and legitimate inference can be drawn. *See, e.g., Castro v. Astrue*, 2011 WL 3500995, at *9 (E.D. Cal. Aug. 9, 2011)

10

(finding *Magallanes* distinguishable where "the ALJ made no interpretation of any of the medical evidence or how it might conflict"); *Burkard v. Astrue*, 2010 WL 5789044, at *21 (D. Or. Dec. 7, 2010) (same where the ALJ did not specifically address and resolve the conflict in the medical evidence). Thus, the ALJ's general discussions of the evidence from Dr. Bang were insufficient for the Court to infer that the ALJ properly rejected the treating psychiatrist's opinion.

Finally, the failure to properly assess the treating psychiatrist's opinion was not harmless error. Such an omission is harmless error when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [opinion], could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir 2015) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). Here, when fully crediting Dr. Bang's opinion, a reasonable ALJ could have reached a different disability determination. This is particularly so given Plaintiff's history of taking multiple strong antidepressant medications, including Celexa, Wellbutrin, Klonopen, Xanax, Zoloft and Trazodone, with little improvement despite notations that Plaintiff's adherence to his medication regime was "good." (*See e.g.,* AR 293-300.) Thus, this issue warrants reversal.

### III. Plaintiff's Testimony and the Lay Witness's Statement (Issue Three)

In the third disputed issue, Plaintiff contends that the ALJ failed to provide legally sufficient reasons to reject both his subjective symptom testimony and his sister's lay witness statements. (Joint Stip. at 16-22.)

#### A. Applicable Law

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible. *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1102 (9th Cir. 2014).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard").

In weighing a plaintiff's credibility, the ALJ may consider a number of factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284). The ALJ must also "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). "General findings are insufficient." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). Indeed, the Ninth Circuit has emphasized that an ALJ is "required to consider and comment upon competent lay testimony, as it concerned how [Plaintiff's] impairments

impact his ability to work." *Bruce*, 557 F.3d at 1115 (emphasis added). "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition." *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). Such testimony is "competent evidence" and "cannot be disregarded without comment." *Bruce*, 557 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). *See also Taylor v. Comm'r of SSA*, 659 F.3d 1228, 1234 (9th Cir. 2011) (ALJ must "provide specific, germane reasons for discounting lay witness testimony" from a claimant's wife).

However, where a lay witness's statements are "similar" to a claimant's statements, if the ALJ gives germane reasons for rejecting the claimant's statements, those reasons are also germane to the lay witness's testimony. *See Valentine v. Comm'r SSA*, 574 F.3d 685, 693-94 (9th Cir. 2009) (where claimant's wife's testimony was similar to his own statements, ALJ's failure to analyze wife's testimony may be harmless); *see also Molina*, 674 F.3d at 1122 (if ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness).

**B.    Analysis**

**1.    Plaintiff's Testimony**

During the administrative hearing, Plaintiff testified about how his mental problems affected his ability to function. (AR 36-70.) Aside from a brief period in 2015, he last worked regularly in 2013, after which he collected unemployment benefits and continued to look for work. (AR 47-48, 51.) On a typical day, he sleeps long hours and does light chores. (AR 48-49.) He sleeps on his girlfriend's couch and helps with light household chores and caring for his friend's cats. (AR 50.) He was fired from several jobs because he could not deal with people and made errors. (AR 52, 58.) He began treatment with a psychiatrist, Dr.

Paul Bang, in mid-2013. (AR 58.) Dr. Bang treated Plaintiff every two to three months, with each visit lasting 30 to 40 minutes. (AR 59, 64-65.) Plaintiff testified that he takes four medications for his depression and anxiety. (AR 60.)

The ALJ determined that although Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms," his subjective symptom testimony was "not entirely credible." (AR 23.) The ALJ explained that "some inconsistencies and discrepancies in the record" diminished Plaintiff's credibility. (AR 22.)

First, the ALJ found that Plaintiff "has refused to engage in more comprehensive treatment of his disease," and cited a treatment note stating that Plaintiff refused neuroleptic supplementation due to fears of potential side effects and also refused lithium augmentation due to blood draws. (AR 22, 346.) This was a clear and convincing reason. An ALJ may base an adverse credibility determination on a claimant's unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. *See Molina*, 674 F.3d at 1113; *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989); *see also Burch*, 400 F.3d at 681 (ALJ may properly rely on lack of consistent treatment).

Second, the ALJ found that Plaintiff expressed to his treatment providers a goal to find work that was "not too hard or not too stressful" and ALJ pointed to Plaintiff's testimony that he is "always searching for work." (AR 22, 338.) The ALJ explained that these statements "indicate he has the ability to work." (AR 22.) This too was a clear and convincing reason for discounting Plaintiff's credibility about the severity of his symptoms. An ALJ may base an adverse credibility determination on a claimant's attempts to work. *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (finding no error in rejection of claimant's pain testimony where evidence reflected he unsuccessfully sought work); *see also Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (same where evidence reflected claimant

received unemployment benefits, thereby "apparently considering himself capable of work and holding himself out as available for work").

Third, the ALJ found that there was a "paucity of objective findings, and the reported objective findings do not support [Plaintiff's] alleged degree of impairment." (AR 22.) Although an ALJ may reject a claimant's subjective symptom testimony for lack of objective medical support, *see Morgan v. Comm'r of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999), the ALJ must identify what objective medical findings are being relied upon. *See Lester*, 81 F.3d at 834 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). Here, the ALJ found that the record showed "no necessity for long-term psychiatric hospitalizations." (AR 22.) In general, evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.1995)). In the context here, however, the Court is not convinced that the lack of long-term psychiatric hospitalizations undermines Plaintiff's complaints, particularly in light of the intensive outpatient treatment he had been receiving and history of strong antidepressant medications. *See Morales v. Berryhill*, 239 F. Supp. 3d 1211, 1218 (E.D. Cal. 2017) ("[T]he ALJ invalidly relied on the fact that the record failed to contain evidence that plaintiff's 'mental status was of such severity that he required psychiatric hospitalization or intensive individual therapy with a psychiatrist or psychologist.' That plaintiff had not experienced psychiatric hospitalization is neither a clear and convincing nor specific and legitimate reason to discredit his testimony."). Accordingly, this explanation alone was not a clear and convincing reason for discounting Plaintiff's credibility as to his subjective symptom testimony.

In sum, the ALJ provided two clear and convincing reasons and a third reason that was legally insufficient to discount Plaintiff's credibility, but in light of the other legally sufficient reasons, this amounted to harmless error. *See Carmickle*, 533 F.3d at 1162-63

15

(holding that an ALJ's reliance on two unsupported reasons was harmless error where the adverse credibility determination otherwise was supported by legally sufficient reasons). Accordingly, the ALJ's assessment of Plaintiff's credibility does not warrant reversal.

### 2. The Lay Witness's Statement

Colleen Thomas, Plaintiff's sister, submitted a third-party report that stated the following about Plaintiff's level of functioning. (AR 186-95.) Plaintiff "worries, stresses, and has anxiety over every normal function." (AR 187.) He is "completely stunted" in basic abilities such as memory, concentration, talking, completing tasks, understanding, following instructions, and getting along with others. (AR 192-93.) He finds anything other than simple instructions to be "completely overwhelming." (AR 193.) He is paranoid that people are "always out to get him." (*Id*.) He has become progressively worse. (AR 195.)

The ALJ gave three reasons for giving "little weight" to Ms. Thomas's report. First, the ALJ found that Ms. Thomas's statements were "not substantiated by the objective evidence." (AR 23.) But an ALJ may not reject the statements of lay witnesses simply because the claimant's medical records did not corroborate their statements about the claimant's alleged symptoms and pain. *See Smolen*, 80 F.3d at 1289 (holding that it is improper to reject the statements of a claimant's family members simply because they are "unsupported by her medical records"); *Taylor v. Comm'r of SSA*, 659 F.3d 1228, 1234 (9th Cir. 2011) ("Nor under our law could the ALJ discredit [their] lay witness testimony as not supported by medical evidence in the record") (citing *Bruce*, 557 F.3d at 1116). Thus, this was not a germane reason.[5]

---

[5] Although an ALJ may not reject a lay witness statement merely because it is uncorroborated or unsupported by objective medical evidence, an ALJ may reject such a statement because it is *inconsistent with* or *contrary to* the objective medical evidence. *See Vincent ex rel Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *see also Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503,

16

Second, the ALJ found that Ms. Thomas's "objectivity possibly might be diminished, in view of the sister-brother relationship." (AR 23.) This also was not a germane reason. Generally, bias can be a germane reason for rejecting a lay witness's statement. *See Greger*, 464 F.3d at 972 (ALJ could consider a lay witness's "close relationship" to the claimant as his girlfriend and the possibility that she was "influenced by her desire to help [him]"). But an inference of bias is not warranted simply from a lay witness's family connection to a claimant. *See Regennitter v. Comm'r of SSA*, 166 F.3d 1294, 1298 (9th Cir. 1999) (bias was not a legitimate reason for discounting the corroborative testimony of the claimant's mother, even though she had testified that she was the claimant's sole source of support); *Smolen*, 80 F.3d at 1289 ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony.") In order to properly reject Ms. Thomas's statement because of her diminished objectivity, the ALJ was required to identify concrete evidence of her lack of objectivity. *See Valentine*, 574 F.3d at 694 (actual evidence that a spouse exaggerated might suffice to reject her testimony, but the fact that she was an interested party "in the abstract" would not). No such evidence was cited here.

Third, the ALJ found that Ms. Thomas's statement was "not presented under oath." (AR 23.) This also was not a germane reason. Unsworn lay statements, even letters, from lay witnesses about a claimant's abilities constitute competent evidence that an ALJ must properly consider. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052, 1053 (9th Cir. 2006) (ALJ was required to consider letter from claimant's brother-in-law); *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 975 (9th Cir.2000) (ALJ was required to consider five letters from claimant's ex-employers and friends); *see also Taylor v. Colvin*, 2016 WL 704352, at *16 (E.D. Cal. Feb. 23, 2016) ("Social Security law does not require, or even

---

511 (9th Cir. 2001). This line of authority is inapplicable here, contrary to the Commissioner's contention (Joint Stip. at 25), because the ALJ did not identify any affirmative inconsistencies or contradictions between Ms. Thomas's statement and the objective medical evidence. (*See e.g.,* AR 23.)

17

suggest, that lay witness statements have to be made under oath. In fact, the form that the Social Security Administration provides to claimants for documenting lay witness statements . . . does not include an oath.") (citation omitted).

Finally, the ALJ's error was not harmless. This was not a case where the ALJ rejected Ms. Thomas's statement for the same reasons he discounted Plaintiff's allegations, so as to offer an alternative legal basis to reject Ms. Thomas's statement. *See Valentine*, 574 F.3d at 694. Nor was this a case where the ALJ completely failed to discuss Ms. Thomas's statement, but the ALJ's reasons for rejecting Plaintiff's testimony applied equally well to the lay witness's statement. *See Molina*, 674 F.3d at 1117. Rather, the ALJ appears to have simply failed in his responsibility to provide legally sufficient reasons for discounting this lay witness testimony with almost no discussion at all of why her testimony was not "substantiated by the objective evidence" or how she was supposedly "biased." Thus, this portion of Issue Three warrants reversal.

## IV. Step Five Determination (Issue Four)

Finally, Plaintiff contends that the ALJ's step five determination was erroneous because it was based on a hypothetical question that failed to account for the opinion of Dr. Bang and for Plaintiff's subjective symptom testimony. (Joint Stip. at 26.) Because this issue is cumulative of arguments that Plaintiff has already made and that the Court has already resolved above, it is unnecessary to further address it here.

## V. Remand For Further Administrative Proceedings

Plaintiff urges that the Court "credit as true" the testimony of treating psychiatrist, Dr. Bang and remand for an immediate award of benefits. (Joint Stip. at 12.) Defendant counters that the "ordinary remand rule" rather than credit-as-true rule applies in this case.

In light of the ALJ's legal errors identified above, the Court agrees with Defendant that remand for further proceedings, rather than an immediate award of benefits, is warranted here.

"An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 874 F.3d 1130, 1132 (9th Cir. 2017). The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Under the credit-as-true rule, a district court may remand for an award of benefits when the following three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. The third of these conditions "incorporates . . . a distinct requirement of the credit-as-true rule, namely that there are no outstanding issues that must be resolved before a determination of disability can be made." *Id.* at 1020, n.26; *see also Leon*, 874 F.3d at 1133 (court must determine whether there are outstanding issues that must be resolved before a disability determination can be made and whether further proceedings would be useful). However, even if those three requirements are met, the Court retains "flexibility" in determining the appropriate remedy and may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).

Here, this matter is not the "rare exception" in which the credit as true rule should be applied and the matter remanded for the award of benefits. For the reasons discussed above, because the evaluations of the treating psychiatrist's opinion and the lay witness's statement

were not supported by legally sufficient reasons, further administrative proceedings would serve a useful purpose of resolving outstanding factual issues. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.") (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)). Accordingly, the Court remands this matter for further administrative proceedings.

**CONCLUSION**

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: March 13, 2018

　　　　　　　　　　　　　　　　　　　/s/ Karen L. Stevenson
　　　　　　　　　　　　　　　　　　　KAREN L. STEVENSON
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE